(9 Misc. Rep. 61.)

### HELWIG v. SECOND AVE. R. CO.

(Common Pleas of New York City and County, General Term. June 4, 1894.)

NEW TRIAL—SURPRISE—NEWLY-DISCOVERED EVIDENCE.

In the determination of a motion to set aside a verdict on the ground of surprise and newly-discovered evidence, the interest of justice is the paramount consideration, and will prevail over the technical rules of practice.

(Syllabus by the Court.)

Appeal from special term.

Action by Louis T. Helwig against the Second Avenue Railroad Company for personal injuries. From an order granting a new trial on the ground of surprise and newly-discovered evidence, plaintiff appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

G. Washbourne Smith, for appellant.

Payson Merrill, for respondent.

PRYOR, J. In an action for personal injury by the negligence of the defendant, the plaintiff had a verdict for $5,000. Upon a case and affidavits, the defendant moved at special term for a new trial on the ground of surprise and newly-discovered evidence. From an order granting the motion, the appeal is taken.

The contention at the trial was upon the question of defendant's negligence; the plaintiff maintaining that he was thrown from the car by its starting while he was in the act of alighting, and the defendant insisting that he fell by attempting to alight while the car was in motion. To this issue the evidence of the parties was directed, and upon this issue the event of the verdict was suspended. Each litigant adduced testimony in support of his position, but the decisive proof came from the man on the platform, in whose immediate presence the casualty occurred. Each party produced a person as that man,—the plaintiff, one Miller; and the defendant, one Mintz. The testimony of Miller, if true, was conclusive of the plaintiff's case. The testimony of Mintz, if true, established the defense. Miller swore that he was the man; Mintz, that he was the man. The plaintiff corroborated Miller. The driver identified Mintz as the man on the platform. The testimony of the conductor would probably be decisive of the dispute. But although, in conference with counsel for the plaintiff, he had frequently and firmly recognized Mintz as the man on the platform, at the trial, on his direct examination, he testified faintly to the fact, and on the cross-examination he admitted, in effect, that he did not remember the man's face. The inevitable impression from the miscarriage of the conductor as a witness was that he had broken down in an attempt to play a suborned part, and that the defense was a fabrication and a

fraud.   No other result of the trial was then possible than a verdict for the plaintiff, and for damages aggravated in amount by just indignation at a wicked effort of the defendant to defeat justice by the perjury of its employe.   While on the stand, the conductor said he was sick, though seemingly well, and betrayed a nervous agitation, upon which plaintiff's counsel animadverted, and of which he availed himself with skill and obvious effect.   That nervous embarrassment the jury could not but impute to a guilty conscience, or else to an apprehension of detection and punishment.   The court took a recess, and then, for the first time, the witness discovered to defendant's counsel signs of mental malady.   He said:

"I have been mesmerized.   Somebody put something under the seat that mesmerized me."

Next morning he went to the company's office, and said to the inspector:

"I want to resign.   I have been mesmerized.   I was mesmerized down at court, on the Helwig case.   Somebody put something under my seat that mesmerized me.   I want to resign.   I don't want to see a doctor.   I am sound.   I have been mesmerized.   I know what I am talking about.   I could not find my way out of the courthouse.   I was passing around there half an hour, trying to get out.   I gave a boy twenty-five cents to show me the way out, and put me on the elevated train."

Early in the following week the witness became maniacal, and before the end of the week was taken by the police to Bellevue Hospital, where he was officially declared insane.

From the facts and the expert evidence, no inference is admissible but that the witness was insane at the time of delivering his testimony.   After all, however, is legal cause apparent in the papers for setting aside the verdict on the ground of surprise and newly-discovered evidence?   What is the newly-discovered evidence.   The fact of the insanity of the witness.   What is the surprise?   That, because of sudden insanity, the witness failed to testify as strongly for the defendant as his previous statements had authorized the expectation, and that, because of sudden insanity, he so displayed himself to the jury as to impress them with a conviction of his perjury. The case is of first impression.   We concede that the specific surprise and newly-discovered evidence are not such as have ever engaged the attention of courts, and been adjudged grounds for vacating a verdict.   To sustain this order, we own that a precedent is to be made; but that precedent we shall set, if indispensable to the interests of justice.   The ultimate end of all law, and the essential function of all courts, is the administration of justice; and it were a preposterous perversion of these institutions to sacrifice their great object to the technical regulations of formal procedure.   If the present were a case identical in circumstance and substance with those out of which arose the rules applicable to new trials for surprise and newly-discovered evidence, we should deem ourselves bound by the precedents.   But, as the instance is unparalleled, we shall be controlled by the principle of the adjudications, namely, that where, apparently, the verdict is against justice, and the party applying for redress without fault, the cause should be submitted

to the arbitrament of another jury. Miller, we have said, was the witness whose testimony determined the verdict for the plaintiff. His appearance in the case challenges the gravest suspicion. Before this action, in a suit for personal injury, plaintiff's attorney had recovered a verdict against this defendant for $15,000 in favor of one Schnieder. Schnieder was unknown to plaintiff, but, on plaintiff's first visit to the attorney in the present case, he was directed by the attorney to go to Schnieder. He went, and there he saw Miller. His recognition of Miller as the man on the platform, and Miller's recognition of him as the man then hurt, were reciprocal and instantaneous. Plaintiff exclaimed, "There is the painter;" and Miller exclaimed, "There is the man that was pushed down from the car." Thus was procured the witness who won plaintiff's case for him. Why did the attorney collecting evidence for the plaintiff direct him to the stranger (Schnieder), the attorney's client in a former action? How happened it that Miller was opportunely at Schnieder's on the occasion of plaintiff's call? Do the circumstances of this extraordinary interview consist with accident, or are they suggestive of contrivance? In our judgment the preponderance of probabilities is with the latter hypothesis; and yet, upon another trial, fuller explanation may efface the ill appearance of the transaction. Then, too, Miller's career, by his own account, is not of the sort to conciliate special confidence. And, in his testimony he mistimed the accident by just a year, swearing positively that it occurred in 1893, whereas it happened in 1892. Plaintiff's testimony, likewise, is replete with prevarication and contradiction. What, then, were the circumstances that induced the jury to give credence to the story of plaintiff and Miller? In the failure of Duffy, the conductor, to verify the strong assurance to the jury by plaintiff's counsel that he would identify Mintz as the man on the platform, and in the nervous agitation of Duffy on the witness stand, we have an explanation of the verdict. What other conclusion was open to the jury than that the defense was a fabrication to be supported by perjury, from which, however, under the strain of the crisis, the witness shrank? With this conviction, no wonder that the jury found for the plaintiff, and in an amount, we repeat, indicative of indignation at the abortive iniquity. But, had Duffy been in full possession of his faculties, who can say that his testimony would not have been equivalent to his previous statements, and would not have satisfied the jury that Mintz, not Miller, was the man who saw the accident. The inference is legitimate, if not inevitable, that the failure of Duffy to give the expected evidence was the effect of sudden insanity,—a surprise, in the legal sense. The fact of his insanity, developed since his testimony, is newly-discovered evidence; and it is a fact which, excluding him from the stand on another trial, will prevent a miscarriage of justice by confounding an insane with a perjured witness. The only laches imputed to the defendant is that, after the strange exhibition of Duffy during the recess of the court, counsel omitted to request the withdrawal of a juror, and, instead, proceeded with the trial. But, surely, a layman is blameless for mistaking the symptoms of incipient insanity; and, on the

eve of summing up, a lawyer is hardly to be held to the most provident circumspection. We are satisfied that the interests of justice will be promoted by sending the cause to another jury. Order affirmed, with costs and disbursements. All concur.